## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **ARNOLD WEINBERG,** | * | |
| **Derivatively on behalf of** | | |
| **BIOMED REALTY TRUST, INC.** | * | |
| **Plaintiff** | | |
| | * | |
| **v.** | | **CIVIL NO.  JKB-11-3116** |
| | * | |
| **ALAN D. GOLD** *et al.,* | | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

Plaintiff Arnold Weinberg has brought this shareholder's derivative suit on behalf of

BioMed Realty Trust, Inc., against various officers and directors of the company, alleging

issuance of a false and misleading proxy statement in violation of section 14(a) of the Securities

Exchange Act of 1934, breach of fiduciary duty, and unjust enrichment.  (Compl., ECF No. 1.)

The complaint indicates the pivotal event leading to this lawsuit was a "say on pay" vote[1] by the

shareholders on May 25, 2011, in which a majority of the shares voted rejected the 2010

executive compensation plan.  (*Id.* ¶ 4.)   The plan was formulated by a three-member

compensation committee of directors and approved by the board.  (*Id.* ¶¶ 20-25.)  Following the

shareholders' vote, the board did not rescind its approval of the compensation plan.  (*Id.* ¶ 6.)

Pending before the Court are two motions to dismiss for failure to state a claim.  The first

motion (ECF No. 14) was filed by BioMed and seeks dismissal on the ground that Weinberg

failed to plead sufficient factual allegations to justify his filing suit without first making a

---

[1]   "Say on pay" is a shorthand reference to a corporate mechanism for allowing shareholders to voice their opinion on executive compensation.  It was established in section 951 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010), and is codified at 15 U.S.C. § 78n-1.

demand on the company to pursue this litigation.  The second motion (ECF No. 15) was filed by the individual defendants asserting the complaint fails to state a claim because no allegations show that the executive compensation decision was reached contrary to the business judgment rule, because no allegations show either a materially false statement or a material omission of fact in the proxy statement, and because no allegations permit a conclusion that it would be inequitable for BioMed's executives to retain their 2010 compensation.   A hearing is unnecessary.  Local Rule 105.6 (D. Md. 2011).  The first motion will be granted and the second motion will be denied as moot.

## I.  *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 1950.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.

In addition to the governing standard of Rule 12(b)(6), Rule 23.1(b) sets forth pleading requirements for a shareholders' derivative suit.  In pertinent part, Rule 23.1(b)(3) requires that the complaint

    state with particularity:

        (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and

        (B) the reasons for not obtaining the action or not making the effort.

## II. Demand Futility

### A. Legal Standards

Rule 23.1 only sets forth a pleading requirement and "does not create a demand requirement of any particular dimension." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (emphasis omitted). At common law, the equitable invention of a shareholder's derivative suit was accompanied by a requirement "that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Id.* at 95-96 (citation omitted).

> The purpose of the demand requirement is to "affor[d] the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right.'" Ordinarily, it is only when demand is excused that the shareholder enjoys the right to initiate "suit on behalf of his corporation in disregard of the directors' wishes." In our view, the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of "substance," not "procedure."

*Id.* at 96-97 (alteration in original; citations omitted). Thus, the standard for excusing demand is defined in a federal derivative action by the law of the State of incorporation. *See id.* at 108-09 (holding so in relation to derivative suit under Investment Company Act of 1940).

BioMed is a Maryland corporation with its principal place of business in California. (Compl. ¶ 15.) Therefore, this Court must look to Maryland law to determine whether demand should be excused in this case. The decision of the Maryland Court of Appeals in *Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001), is the most recent, authoritative exposition of Maryland law on the issue of demand futility.

The *Werbowsky* court reviewed at length the evolution of the standard for demand futility both in Maryland and beyond. In Maryland, the issue remains governed by common law, although a number of other jurisdictions have enacted the demand requirement and exception

into statutory law.  Moreover, the trend outside of Maryland has been either to eliminate the exception or to define it in a way that appears aimed at reducing its availability.  766 A.2d at 137.  But in considering the various standards for demand futility, the court declined to adopt either the Delaware approach or the models proposed by the American Bar Association ("ABA") and the American Law Institute ("ALI").  *Id.* at 143.

The Delaware standard is formulated thusly:

[Whether] a reasonable doubt is created that:  (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment.

*Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000), *quoted in Werbowsky*, 766 A.2d at 139.

The ABA standard is contained in the Model Business Corporation Act:

No shareholder may commence a derivative proceeding until:

(1) a written demand has been made upon the corporation to take suitable action; and

(2) 90 days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

ABA, Model Business Corporation Act, § 7.42, *quoted in Werbowsky*, 766 A.2d at 140.

The ALI standard is similar to the ABA standard:

(a) Before commencing a derivative action, a holder or a director should be required to make a written demand upon the board of directors of the corporation, requesting it to prosecute the action or take suitable corrective measures, unless demand is excused under § 7.03(b).  The demand should give notice to the board, with reasonable specificity, of the essential facts relied upon to support each of the claims made therein.

(b) Demand on the board should be excused only if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of the action.

(c) Demand on shareholders should not be required.

> (d) Except as provided in § 7.03(b), the court should dismiss a derivative
> action that is commenced prior to the response of the board or a committee
> thereof to the demand required by § 7.03(a), unless the board or committee
> fails to respond within a reasonable time.

ALI, *Principles of Corporate Governance:  Analysis and Recommendations* § 7.03, *quoted in*

*Werbowsky*, 766 A.2d at 140.

As noted by the court, the ABA/ALI approach creates a universal demand standard that effectively eliminates the futility exception, *id.* at 140-41, and is a "radical departure" from Maryland common law; such an approach, opined the court, should be subjected to the legislative processes rather than becoming the rule of law via judicial decision, *id.* at 143.  The Delaware standard was viewed by the court as "an exacting requirement," *id.* at 139, that had been criticized by others as unnecessarily injecting "'a substantial measure of subjective judicial discretion into the decision whether to excuse demand,'" *id.* at 141 (citing ALI, *Principles*, cmt. d to § 7.03).  Further, the court noted that few states had abandoned their existing law in favor of the Delaware approach.

The *Werbowsky* court, although declining to adopt either of these standards, did make several observations about the demand futility issue.  First, the court noted it was unwilling to excuse demand

> simply because a majority of the directors approved or participated in some way
> in the challenged transaction or decision, or on the basis of generalized or
> speculative allegations that they are conflicted or are controlled by other
> conflicted persons, or because they are paid well for their services as directors,
> were chosen as directors at the behest of controlling stockholders, or would be
> hostile to the action.

766 A.2d at 143-44.

Second, the court reaffirmed the importance of the demand requirement, which recognizes the presumption that directors act properly and in a company's best interests in accordance with the business judgment rule.  *Id.* at 144.  Additionally, the court agreed with the

ABA and the ALI "that, in most cases, a pre-suit demand on the directors is not an onerous requirement." *Id.* Such a demand gives a company's directors "an opportunity to consider, or reconsider, the issue in dispute." *Id.* Noting that, in some cases, the demand may be the directors' "first knowledge that a decision or transaction they made or approved is being questioned," the court indicated directors might respond by seeking the advice of a special litigation committee of independent directors or by acceding to the demand rather than risking embarrassing litigation. *Id.* Further, the futility exception effectively prevents any opportunity for "meaningful pre-litigation alternative dispute resolution." *Id.* Finally, if a demand is refused, then that decision can be reviewed in court under the business judgment rule standard.

Based on all of these considerations, the *Werbowsky* court concluded,

> We adhere, for the time being, to the futility exception, but, consistent with what appears to be the prevailing philosophy throughout the country, regard it as a very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Id.*

### B.  Plaintiff's Allegations

Weinberg has offered the following rationales for excusing demand on the board as a whole prior to initiation of this lawsuit:

1. Each director was on the board when the executive compensation plan was approved by the board and rejected by the shareholders, each director participated in the issuance of the contested proxy statement, and each such director has been named as a defendant in this action.  (Compl. ¶ 62.)

2. Each director is interested in the outcome of the litigation because each one faces a substantial likelihood of liability.  (Compl. ¶ 63.)

3. The "say on pay" vote rebuts the presumption that the directors exercised valid business judgment.  (Compl. ¶ 64.)

4. The board's issuance of allegedly false statements indicating the executive compensation policy was based on performance was not a valid business judgment.  (Compl. ¶ 65.)

5. Directors have exhibited antipathy towards the relief sought by this lawsuit by recommending approval of the compensation plan and then failing to rescind their decision following the "say on pay" vote.  (Compl. ¶ 66.)

6. The board has failed to seek a recovery for BioMed.

Weinberg has also asserted that demand is excused on each named director for the following reasons:

7. Director Alan Gold is CEO of BioMed, he is not an independent director, and his compensation is determined by the board's compensation committee.  (Compl. ¶ 68.)

8. Director Gary Kreitzer is the vice president and general counsel of BioMed, he is not an independent director, and his compensation is determined by the board's compensation committee.  (Compl. ¶ 69.)

9. Director Edward Dennis is chairman of the compensation committee.  (Compl. ¶ 70.)

10. Director Barbara Cambon is a member of the compensation committee.  (Compl. ¶ 71.)

11. Director Richard Gilchrist is a member of the compensation committee.  (Compl. ¶ 72.)

12. Director Margaret Wilson is a member of the board.  (Compl. ¶ 73.)

13. Director Theodore Roth is a member of the board.  (Compl. ¶ 74.)

### C.  Analysis

Keeping in mind *Werbowsky*'s clear statement that mere participation in or approval of the challenged transaction by directors does not excuse demand, the Court concludes that reasons one and nine through thirteen above are insufficient to justify application of the futility exception.  It is certainly arguable that the two directors who are officers of the company and are beneficiaries of the compensation plan "are so personally and directly conflicted . . . that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  766 A.2d at 144.  But Gold and Kreitzer are only two out of seven members of the board, which means that at least two more members of the board would have to be personally disqualified before the *Werbowsky* standard is satisfied.  Simply being members of the board or the compensation committee and participating in the decision-making do not suffice.  *Accord In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 879, 887 (W.D. Tenn. 2010) (applying Maryland law); *Caston v. Hoaglin*, No. 08-CV-200, 2009 WL 3078214, at *7-8, 12 (S.D. Ohio Sept. 23, 2009) (same).

Likewise, merely because directors are named in the instant suit does not mean that *prior to the suit*, a demand would have been futile.  The futility of pre-suit demand should not be analyzed based on post-filing circumstances.  Such circumstances are not mentioned by the *Werbowsky* opinion as valid considerations.  It must be remembered that *Werbowsky* specifically affirmed the importance of the demand requirement for several good reasons, including the opportunity to reconsider a decision and the opportunity to engage in meaningful pre-suit alternative dispute resolution.  These important considerations would be nullified in every shareholder's derivative suit that named directors as defendants if simply naming them as parties provided excuse for pre-suit demand.  *See also Seidl v. Am. Century Cos.*, 713 F. Supp. 2d 249, 260-61 (S.D.N.Y. 2010) (potential exposure by directors to liability did not excuse demand

under Maryland law), *aff'd*, 427 F. App'x 35 (2d Cir.) (unpublished), *cert. denied*, 132 S. Ct. 846 (2011); *Regions Morgan Keegan*, 694 F. Supp. 2d at 887-88 (possibility directors might have to sue themselves did not waive demand under Maryland law).  Consequently, reason number two does not establish the futility exception.

Reasons three and four, i.e., whether the directors' actions were the product of valid business judgment, go to the merits of the case, and *Werbowsky* implicitly disallows consideration of the merits of the case in analyzing demand futility.  766 A.2d at 144 (standard "focuses the court's attention on the real, limited, issue—the futility of a pre-suit demand—and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint—whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the decision or transaction under attack").  Although it can be reasonably argued that a "say on pay" vote provided the board an opportunity to reconsider its decision regarding executive compensation, it should not be seen as the equivalent of a pre-suit demand.  A shareholder advisory vote is fundamentally different from a demand for litigation. The former can certainly produce unfavorable publicity, but it does not inevitably result in a lawsuit.  The latter is much more likely to result in a lawsuit if the shareholder concerns are not resolved.  Although a "say on pay" vote may be reasonably considered as a factor in the demand futility analysis, it is not conclusive in this case.

Weinberg cites a "say on pay" case from the Southern District of Ohio in which the court found demand futile because the directors "devised the challenged compensation, approved the compensation, recommended shareholder approval of the compensation, and suffered a negative shareholder vote on the compensation," thus establishing reason to doubt the challenged transaction was the result of a valid business judgment.  *NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox*, 2011 WL 4383368, at *4 (S.D. Ohio Sept. 20, 2011).  It must be

noted that this case was analyzed under Ohio and Delaware standards for demand futility, but neither standard is comparable to the Maryland standard.   Under Ohio law, according to *Cincinnati Bell*, demand is presumptively futile where the directors are involved in the transactions attacked, *id.*; in Maryland, however, mere involvement by directors in the challenged transaction does not excuse demand.  The Delaware standard was previously noted to focus on the merits of the transaction at issue, contrary to the standard set forth in *Werbowsky*, which eschewed consideration of the merits in analyzing demand futility.   766 A.2d at 144. Thus, the *Cincinnati Bell* case is unpersuasive.[2]

BioMed cites the "say on pay" case of *Plumbers Local No. 137 Pension Fund ex rel. Umpqua Holdings Corp. v. Davis*, 2012 WL 104776 (D. Or. Jan. 11, 2012), *adopted as the district court's opinion*, 2012 WL 602391 (D. Or. Feb. 23, 2012), as an opinion favorable to its position.  This case also relied upon the Delaware standard.  Notably, it discounted the argument that the board members could not be considered disinterested because they allegedly faced a substantial likelihood of liability in the derivative action.   2012 WL 104776, at *5.  The court opined its disagreement with the *Cincinnati Bell* case and found plaintiffs' argument circular in logic and, thus, unpersuasive.  This Court agrees with that analysis.  Further, the *Plumbers Local No. 137* decision found wanting plaintiffs' additional argument that the "say on pay" vote was *prima facie* evidence that the board's decision on executive compensation nullified the presumption of valid business judgment.  *Id.* at *7.  The court observed the board's challenged decision was not contrary to any company bylaw, any shareholder agreement, or any legally mandated disclosure or reporting requirement; instead, plaintiffs there (as plaintiff does here) contended the decision was contrary to a "pay for performance" policy, but, as the court noted,

---

[2] It was also, apparently, decided when the court lacked subject-matter jurisdiction, belatedly discovered, according to later filings on the court's docket.

the policy did not establish a binding standard for compensation. *Id.* The court did note the policy statement was not made until after the compensation decision was made, *id.*, and it is unknown in the present case when these two events occurred in relation to each other, but this does not seem to be a critical difference between the two cases. The court concluded that plaintiffs' allegations failed to create a reasonable doubt that the board made the decision honestly and in good faith, thereby failing to overcome the presumption of valid business judgment. *Id.* This Court concludes the *Plumbers Local No. 137* case sets forth a reasonable analysis under Delaware law, but the Maryland standard is so different from the Delaware standard that, in the end, the cited case does not alter the Court's analysis, and the Court does not rely upon it in deciding the instant case. That the two opinions arrive at the same conclusion under different standards for demand futility is nevertheless noteworthy, however.

Reason number five alleges that the directors have exhibited antipathy towards the relief sought by this lawsuit by recommending approval of the compensation plan and then failing to rescind their decision following the "say on pay" vote. This is only a variation on the first reason, that is, participation in the challenged transaction. It also falls within the category of "generalized or speculative allegations" that the directors would be hostile to the action, considered by *Werbowsky* as inadequate to excuse demand. 766 A.2d at 143-44.

The remaining reason, number six, is that BioMed has not sought recovery of the amounts Weinberg believes ought to be recovered. This is only marginally different from the allegation that the board has not rescinded its approval of the executive compensation plan or the allegations that the board's actions are not the result of a valid business judgment, neither of which is sufficient to excuse demand under the *Werbowsky* standard.

In sum, Weinberg does not offer sufficient allegations in his complaint to excuse demand under the futility exception recognized by Maryland law.  BioMed's motion to dismiss for failure to state a claim will be granted.

## IV.  Conclusion

Because BioMed's motion to dismiss will be granted, the Court will deny as moot the individual defendants' motion to dismiss for failure to state a claim.  A separate order will issue.

DATED this 12<u>th</u> day of March, 2012.

BY THE COURT:


_____/s/_____
James K. Bredar
United States District Judge